[No. A027619. First Dist., Div. One. Aug. 4, 1987.]

PARAMOUNT EXPORT COMPANY, Plaintiff and Appellant, v. ASIA TRUST BANK, LTD., Defendant and Respondent.

COUNSEL

Richard N. Rapoport, Hanson, Bridgett, Marcus, Vlahos & Rudy and Rudy, Rapaport & Holden for Plaintiff and Appellant.

Allan J. Joseph, Marjorie E. Cox, Allen S. Samelson and Rogers, Joseph, O'Donnell & Quinn for Defendant and Respondent.

OPINION

NEWSOM, J.—■ ■ ■ ■ In February 1982, Paramount Export Company (hereafter appellant or Paramount) filed a complaint for declaratory relief and damages for money due on a letter of credit[1] against Wells Fargo, respondent's advising bank, and Central Bank in San Francisco Superior Court. In May 1983, the Superior Court entered judgment in favor of Wells Fargo and Central Bank. Having lost that case,

---

[1] A commercial letter of credit is utilized to facilitate commercial transactions between reluctant sellers and buyers, both of whom are hesitant to rely solely upon the promises of the other. "The primary purpose of . . . a letter of credit is to provide an assurance to the selling party . . . of prompt payment against documents, i.e., to provide a method of payment, through banking channels, which defines the terms and conditions upon which and only upon which the payment will be made and which, within the strict limits of those terms and conditions, engages the full primary responsibility of the bank to make the payment." (*Venizelos, S.A.* v. *Chase Manhattan Bank* (2d Cir. 1970) 425 F.2d 461, 464.)

Paramount instituted the present action in July 1983 against Asia Trust Bank Ltd., (hereafter respondent or Asia Trust) alleging that respondent had wrongfully dishonored a letter of credit.

In October 1983, respondent Asia Trust answered the complaint, alleging that Paramount had failed to mitigate damages and to perform the terms of the letter of credit. Respondent also alleged that appellant was collaterally estopped from contending that it had complied with the terms and conditions of the letter of credit.

In March 1984, respondent moved the court for summary judgment or alternatively for summary adjudication of issues. Judgment was entered against Paramount and Paramount filed a timely notice of appeal.

The factual context is as follows. In October 1981, Paramount Export Company entered into an agreement to sell produce to C & T Limited Partnership (hereafter C & T), to be delivered at Bangkok, Thailand. In accordance with the agreement C & T arranged a letter of credit with Asia Trust for the benefit of Paramount. The letter of credit made available upon presentation of drafts by Paramount the sum of $85,297.50 to cover C & T's purchase of produce. Asia Trust arranged for Wells Fargo to advise and pay the credit on its behalf.

Pursuant to the agreement, onions were shipped on November 6, 1981, before the letter of credit was received by Paramount. Five days later, on November 11, 1981, the following letter of credit, describing the subject and methods of shipment, was sent to Paramount: "1,350 CARTONS 'CRANE' WASHINGTON EXTRA FANCY RED DELICIOUS APPLES, 100's. 1,350 CARTONS 'CRANE' WASHINGTON EXTRA FANCY RED DELICIOUS APPLES, 88/100. 800 BAGS. COLORADO YELLOW ONIONS, SIZE 1.5 - 2.5. 1,600 BAGS. COLORADO YELLOW ONIONS, SIZE 1.875 - 2.5. APPLES: SHIPMENT IN FOUR LOTS, STOWED IN REFRIGERATED CONTAINERS. ONIONS : *Shipment Stowed In Ventilated Containers With Doors Off.*" (Italics added.) The document was accompanied by a letter which specifically advised Paramount that the bill of lading must state that the onions were stored in ventilated containers with doors off; however, no such requirement was set forth in the letter of credit itself.

On November 16, 1981, Paramount submitted the bill of lading to Wells Fargo, together with demand for payment. Although four lots were involved in the transaction, the only bill of lading rejected by Wells Fargo was that presented by Paramount which indicated the onions had been vent

stowed[2] but did not state that the onions had been shipped "in ventilated containers with doors off," as required by the letter of instruction which accompanied the letter of credit.

On November 18, 1981, Wells Fargo advised Paramount that it refused payment on the letter of credit because the bill of lading failed to expressly state that the onions had been stored in ventilated containers with the doors off. Wells Fargo paid $55,341 to Paramount for the remaining orders of apples and onions, deducting the $16,880 from the payment otherwise due Paramount for the four lots.

On November 30, 1981, Paramount received a telephone call and telex from its customer in Bangkok requesting that the 1,600 bags of onions be diverted to Singapore. Paramount refused. Between December 8 and 16, 1981, Paramount complained to Wells Fargo's letter of credit department that it had complied with the requirements of the letter of credit. On December 21, 1981, Wells Fargo telexed Asia Trust pointing out that the letter of credit issued by Asia Trust did not itself specify a requirement that the onions be shipped in ventilated containers with the doors off. Rather than correct the bill of lading to conform to the requirements of the letter of credit, appellant instead sought a guarantee from Central Bank. While the dispute continued, during the second week of January 1982, the onions were destroyed by the Thai government as a health hazard.

■ On this appeal, respondent contends that appellant is collaterally estopped from relitigating the question of whether appellant's bill of lading conformed to the terms and conditions of respondent's letter of credit.

Prior to filing the instant suit, appellant initiated an action against Wells Fargo, respondent's advising bank, alleging that, since the letter of credit itself contained no requirement that the bill of lading specifically state the onions had been shipped in ventilated containers with doors off, appellant therefore had complied with all of the terms and conditions of the letter of credit and was entitled to payment for the onion lot.

In its statement of intended decision, the trial court first concluded that Wells Fargo's only legal responsibilities as the advising bank were to correctly advise Paramount of the terms of the credit, and then to assure that the documents presented by Paramount conformed to such terms before any payment would be made. (See also Cal. U. Com. Code, § 5107, subd. (1) [advising bank assumes obligation for the accuracy of its description of the terms of a credit].)

---

[2] "Vent Stow" is industry language meaning that the goods had been stored in ventilated containers with the doors off. There is no dispute that the onions were in fact so shipped.

The court then held: "The act of Wells Fargo at the outset in requiring the Bill of Lading to set forth in full the stowage requirements was not a modification or enlargement of the conditions of the Letter of Credit. Only the carrier could give assurance the goods were shipped in ventilated containers with doors off. The invoice of Paramount would not satisfy such requirement. [¶] *Evidence suggests there may have been a breach on the part of the consignee or the issuing Bank. [Respondent.]* However, they are not parties to this action nor does their conduct have bearing on the duties of the defendants." (Italics added.)

The doctrine of collateral estoppel precludes a party to an action from relitigating issues which have already been determined in a prior action. (*People* v. *Sims* (1982) 32 Cal.3d 468, 477 [186 Cal.Rptr. 77, 651 P.2d 321].) For the doctrine to apply, the following requirements must be met: (1) the previous proceeding must have resulted in a final judgment on the merits; (2) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the prior proceeding and; (3) the issue necessarily decided at the previous proceeding must be identical to the one which is sought to be relitigated. (*Id.* at p. 484.)

As there is no dispute that the judgment in the prior proceeding is final and the parties are in privity, the remaining question is whether the court below determined that Paramount complied with the terms and conditions of the letter of credit.

The trial court's holding on this issue was that the bill of lading did not conform to the terms and conditions of the letter of credit. On collateral estoppel principles, therefore, appellant cannot now contend otherwise.

Having so concluded, we find it unnecessary to consider appellant's arguments that it should be excused from strict compliance under the rule of "reasonable flexibility" laid down in *U.S. Industries, Inc.* v. *Second New Haven Bank* (D.Conn. 1978) 462 F.Supp. 662 and related cases.

We next turn to appellant's contention that, even if it did not fully comply with the terms and conditions of the letter of credit, or is estopped from so asserting, respondent's failure to comply with article 8 of the Uniform Customs and Practice for Commercial Documentary Credits (1974 rev.) (hereafter UCP) precludes respondent from establishing such noncompliance.

Before addressing the substantive question presented, a brief review of the letter of credit's function in international transactions is helpful to a better understanding of the issue before this court.

■ "Originally devised to function in international trade, a letter of credit reduced the risk of nonpayment in cases where credit was extended to strangers in distant places. Interposing a known and solvent institution's (usually a bank's) credit for that of a foreign buyer in a sale of goods transaction accomplished this objective. [Citation.] A typical letter of credit transaction, . . . involves three separate and independent relationships—an underlying sale of goods contract between buyer and seller, an agreement between a bank and its customer (buyer) in which the bank undertakes to issue a letter of credit, and the bank's resulting engagement to pay the beneficiary (seller) providing that certain documents presented to the bank conform with the terms and conditions of the credit issued on its customer's behalf. Significantly, the bank's payment obligation to the beneficiary is primary, direct and completely independent of any claims which may arise in the underlying sale of goods transaction. [¶] Several distinct features characterize letters of credit. By conditioning payment solely upon the terms set forth in the letter of credit, the justifications for an issuing bank's refusal to honor the credit are severely restricted, thereby assuring the reliability of letters of credit as a payment mechanism. Banks readily issue these instruments because they are simple in form. Hence, they are convenient and economical for a customer (buyer) to obtain. Further, employing concepts which underlie letters of credit in non-sale of goods transactions enables these devices to serve a financing function, [citation]. [¶] [¶] Since the great utility of letters of credit arises from the independent obligation of the issuing bank, attempts to avoid payment premised on extrinsic considerations—contrary to the instruments' formal documentary nature—tend to compromise their chief virtue of predictable reliability as a payment mechanism. [Citation.] Viewed in this light it becomes clear that the doctrine of strict compliance with the terms of the letter of credit functions to protect the bank which carries the absolute obligation to pay the beneficiary. Adherence to this rule ensures that banks, dealing only in documents, will be able to act quickly, enhancing the letter of credit's fluidity. Literal compliance with the credit therefore is also essential so as not to impose an obligation upon the bank that it did not undertake and so as not to jeopardize the bank's right to indemnity from its customer. Documents nearly the same as those required are not good enough. [Citations.]" (*Voest-Alpine Intern. Corp.* v. *Chase Manhattan Bank* (2d Cir. 1983) 707 F.2d 680, 682-683.)

. ■ With these principles in mind, we turn now to the question of whether respondent's failure to comply with article 8 precludes respondent from asserting that appellant did not comply with the terms and conditions of the letter of credit. The letter of credit established for the benefit of appellant was specifically made subject to article 8 of the UCP, which provides in relevant part: "c. If, upon receipt of the documents, the issuing

bank considers that they appear on their face not to be in accordance with the terms and conditions of the credit, that bank must determine, on the basis of the documents alone, whether to claim that payment, acceptance or negotiation was not effected in accordance with the terms and conditions of the credit. [¶] d. The issuing bank shall have a reasonable time to examine the documents and to determine as above whether to make such a claim. [¶] e. If such claim is to be made, notice to that effect, stating the reasons therefor, must, without delay, be given by cable or other expeditious means to the bank from which the documents have been received (the remitting bank) and *such notice must state that the documents are being held at the disposal of such bank or are being returned thereto.* [¶] f. *If the issuing bank fails to hold the documents at the disposal of the remitting bank, the issuing bank shall be precluded from claiming that the relative payment, acceptance or negotiation was not effected in accordance with the terms and conditions of the credit.*" (Italics added.)

It is undisputed that, after notifying appellant it had not complied with the terms of the letter of credit, respondent failed either to return the defective documentation or to hold it at the disposal of the advising bank, in violation of subdivision e. And when the issuing bank fails to comply with this rule, subdivision f provides that it shall be precluded from asserting that the terms and conditions of the letter of credit have not been fulfilled. In *Bank of Cochin Ltd.* v. *Manufacturers Hanover Trust* (D.C.N.Y. 1985) 612 F.Supp. 1533, 1542, the court interpreted article 8, subdivisions e and f, and held that Cochin was "precluded from claiming wrongful honor because of its failure to comply with the explicit notice and affirmative obligation provisions of the UCP . . . ." Under *Bank of Cochin* and the plain language of article 8, respondent is precluded from asserting noncompliance with the letter of credit since it failed to return the defective documentation.

Respondent, however, relies on *Philadelphia Gear Corp.* v. *Central Bank* (5th Cir. 1983) 717 F.2d 230 for the proposition that appellant is estopped from raising respondent's failure to comply with article 8. There, Philadelphia Gear *knowingly* submitted defective documentation, because of which Central Bank refused to honor its letter of credit. The bank not only declined to specify what deficiencies existed, but also failed to return the documents, in violation of article 8, subdivision e. Because Central Bank failed to return the documents, thereby depriving Philadelphia Gear of the opportunity to correct the deficiencies, the district court held that Central Bank was estopped from raising the documents' deficiencies as a defense, notwithstanding the strict compliance rule. (*Id.* at p. 234.)

The appellate court reversed, holding that a knowing tender of defective documentation absolves the issuing bank of its duty to give notice of the

defects and to return the documentation. (*Id.* at p. 238.) We think *Philadelphia Gear* distinguishable from the present case. First, no evidence in the present record suggests, let alone proves, that Paramount knowingly provided defective documentation. Instead, given the ambiguity of the instruction contained, not in the letter of credit itself, but in a collateral document, Paramount manifestly believed it had submitted a bill of lading which complied with the storage requirement demanded by its consignee. Indeed, we note that Wells Fargo, as advising bank, adopted this very position when, on December 21, 1981, six weeks after shipment, it advised respondent bank in effect that compliance with the shipping instructions had been achieved.

We are also of the respectful opinion that *Philadelphia Gear* is wrongly decided. In its holding, the court first observed that a letter of credit "is a peculiar form of executory contract, one whereby the issuer makes a continuing offer to pay upon the beneficiary's performance of the terms and conditions stipulated in the credit. [Citation.] In consequence, an issuer's obligation to pay is wholly conditioned upon the beneficiary's performance, here, the delivery of specified documents. Further, nonpayment by the issuer gives rise to an action by the beneficiary for breach of contract in which the beneficiary must plead and prove due performance on its part. [Citation.] As stated above, due performance may be demonstrated only by a showing of compliance with the credit's terms." (*Id.* at p. 238.)

Thus, under the court's analysis, Central Bank's obligation to honor the letter of credit and to comply with the terms of article 8 was wholly conditioned upon Philadelphia's strict compliance with the terms of the letter of credit. Yet the plain terms of article 8 presuppose some sort of noncompliance by the beneficiary who is nevertheless entitled to rely upon the protection afforded by subdivisions e and f. Thus, the rationale underlying the entire opinion is completely inconsistent with the plain language of article 8.

In our view, it is a reasonable inference that article 8 was enacted to obviate the harshness of the "strict compliance" rule by requiring issuing banks to follow an equally rigid practice which permits the beneficiary to rectify in timely fashion any errors in the documentation supporting a letter of credit. Moreover, we think it would be fundamentally unfair to exact strict compliance from the beneficiary without affording an opportunity to rectify documentary errors before·harm has been suffered by any party to the commercial transaction.

Respondent, however, contends that a decision in favor of appellant would undermine the policies behind article 8, since appellant refused to

avail itself of the opportunity to correct the errors and instead sought a guarantee.

While it is true that this policy is not served under the particular facts of this case, the result is justified by general rules surrounding letters of credit, as articulated by the dissent in *Philadelphia Gear* who stated: "Letters of credit are near-mechanical forms of payment designed to facilitate commercial exchange. The terms of letters of credit and applicable laws choreograph an elaborate dance. As long as the steps are followed, payment also follows. There is no need to make inquiries into the underlying transaction; the parties need merely pirouette down the path prescribed by the letter and applicable statutes. Facial compliance is the watchword. [¶] The procedures relating to dishonoring a draft are equally choreographed. One of the important turns in that dance is providing the beneficiary an opportunity to correct a defective draft. I.C.C.Pub. 290, arts. 8(e), (f) delineates two steps in this turn: an issuing bank must return the defective draft and give specific notice of the defects. These two steps are crucial to allowing an innocent beneficiary an opportunity to cure an inadvertent error in a draft. *Though this motivation is less compelling when the beneficiary knew beforehand of the defects, the steps are still part of the dance.*" (*Philadelphia Gear Corp.* v. *Central Bank* (5th Cir. 1983) 717 F.2d 230, 241; italics added; fn. deleted.)

Thus, allowing appellant to prevail is justified under the general rules surrounding letter of credit transactions which require the parties to mechanically follow certain procedures. The underlying facts of the particular case are not taken into consideration. (*Voest-Alpine Intern. Corp.* v. *Chase Manhattan Bank, supra,* 707 F.2d 680, 682-683.) Respondent failed to follow the strict procedure set forth in article 8, subdivisions e and f and now must bear the consequences of that dereliction. The rigid, and sometimes unfair rules regarding letters of credit resulted in the trial court's judgment that appellant did not technically fulfill the credit's requirements even though it is undisputed that appellant shipped the produce in the manner requested and merely described the produce as "vent stowed" rather than "stored in ventilated containers with doors off." Equally rigid rules of UCP, article 8 unequivocally state that if the issuing bank fails to return the defective documentation then it shall be "precluded from claiming that the relative payment . . . was not effected in accordance with the terms and conditions of the credit." (Art. 8, subd. e.) If appellant is expected to abide by the strict rules surrounding letter of credit transactions, respondent is under an equal obligation to do so.

Moreover, it is important to note that respondent's breach in failing to return the defective documentation is no more excusable than appellant's failure to correct the documentation. Respondent would have this court

completely excuse it from its own breach of obligation while we are urged to punish appellant for its intransigence in failing to remedy the defects. Both parties are in *pari delicto;* each failed to adhere to the strict regulations surrounding letter of credit transactions.

If literal compliance is the watchword for letter of credit transactions, then all parties involved must bear the risk that the literal and exacting nature of the transactions may at times operate to their disadvantage. In the instant case, respondent was the last "dancer" who failed to properly "pirouette down the path" prescribed by UCP article 8, subdivisions e and f. We therefore conclude that respondent is estopped from asserting that appellant did not comply with the terms and conditions of the letter of credit.

The judgment is reversed. Costs to appellant.

Racanelli, P. J., and Holmdahl, J., concurred.