**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-20363
_____

Voest-Alpine Trading USA Corporation,

Plaintiff-Appellee,

versus

Bank of China; et al

Defendants

Bank of China

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____
April 23, 2002

Before POLITZ, STEWART, and CLEMENT, Circuit Judges.

CLEMENT, Circuit Judge:

The Bank of China appeals an adverse judgment in its dispute with Voest-Alpine Trading USA Corporation regarding the validity of a letter of credit. After conducting a bench trial, the district court concluded that the bank improperly refused payment on the letter and awarded Voest-Alpine damages and attorney's fees. We affirm the district court's judgment.

## I. FACTS AND PROCEEDINGS

In June 1995, Jiangyin Foreign Trade Corporation ("JFTC"), a Chinese company, agreed to purchase 1,000 metric tons of styrene monomer from Voest-Alpine Trading USA Corporation ("Voest-Alpine"),

an American company.  At Voest-Alpine's insistence, JFTC obtained a letter of credit from the Bank of China for the purchase price of $1.2 million.  The letter of credit provided for payment to Voest-Alpine after it delivered the monomer and presented several designated documents to the Bank of China in accordance with the Uniform Customs and Practice for Documentary Credits of the International Chamber of Commerce, Publication No. 500 ("UCP 500").

By the time Voest-Alpine was ready to ship its product, the market price of styrene monomer had dropped significantly from the original contract price.  JFTC asked for a price concession, but Voest-Alpine refused.  After shipping the monomer to JFTC, Voest-Alpine presented the documents specified in the letter of credit to Texas Commerce Bank ("TCB"), which would forward the documents to the Bank of China.  TCB noted several discrepancies between what Voest-Alpine presented and what the letter of credit required.  Because it did not believe any of the discrepancies would warrant refusal to pay, Voest-Alpine instructed TCB to present the documents to the Bank of China "on approval," meaning that JFTC would be asked to waive the problems.

The Bank of China received the documents on August 9, 1995. On August 11 the bank notified TCB that the documents contained seven discrepancies and that it would contact JFTC about acceptance.  On August 15, 1995, TCB, acting on behalf of Voest-Alpine, responded that the alleged discrepancies were not adequate grounds for dishonoring the letter of credit and demanded payment.

2

On August 19, the Bank of China reiterated its position that the documents were insufficient and stated, "Now the discrepant documents may have us refuse to take up the documents according to article 14(B) of UCP 500." JFTC refused to waive the discrepancies, and the Bank of China returned the documents to TCB on September 18, 1995.

In October 1995, Voest-Alpine filed the instant action for payment on the letter of credit. The Bank of China initially filed a motion for judgment on the pleadings seeking dismissal for lack of jurisdiction and improper venue, which the district court denied. We affirmed the district court's jurisdictional decision and held that the venue order was not yet appealable, and the case proceeded to trial. *See* <u>Voest-Alpine Trading USA Corp. v. Bank of China</u>, 142 F.3d 887 (5th Cir. 1998) ("<u>Voest-Alpine I</u>"). After conducting a bench trial, the district court ruled in favor of Voest-Alpine, finding that the Bank of China's August 11, 1995 telex failed to provide notice of refusal and that the discrepancies noted in that telex were not sufficient to allow rejection of the letter of credit.

## II. DISCUSSION

### A. Venue

As an initial matter, the Bank of China argues that the district court erroneously determined venue to be proper in the Southern District of Texas. We disagree. A substantial number of

3

the events giving rise to the instant dispute occurred in Texas. First, although the letter of credit was initiated in China, it was negotiated in both China and Houston and was sent to Voest-Alpine for acceptance at its headquarters in Houston. Second, Voest-Alpine presented the allegedly discrepant documents to TCB in Houston. Finally, payment was to be made to TCB in Houston. Accordingly, the district court correctly held that venue in the Southern District of Texas was proper. *See* 28 U.S.C. § 1391.

## B. Notice of Refusal

The Bank of China's primary contention on appeal is that the district court erroneously concluded that the bank failed to provide proper notice of refusal to Voest-Alpine. In order to reject payment on a letter of credit, an issuing bank must give notice of refusal to the beneficiary "no later than the close of the seventh banking day following the day of receipt of the [presentation] documents." UCP 500 art. 14(d). If the Bank of China did not provide timely notice, it must honor the letter of credit despite any questions as to Voest-Alpine's compliance. *See* Heritage Bank v. Redcom Lab., Inc., 250 F.3d 319, 327 (5th Cir. 2001)(stating that an issuing bank waives its right to reject a letter of credit if it does not give notice of refusal within the time allotted by Article 14(d) of the UCP 500).

The parties first dispute the applicable standard of review for this issue. In a bench trial, findings of fact are reviewed

4

for clear error and legal issues are reviewed de novo. *See* Kona Technology Corp. v. Southern Pacific Transportation, 225 F.3d 595, 601 (5th Cir. 2000). Voest-Alpine submits that adequacy of refusal is a factual determination subject to clear error review, because the UCP 500 is a set of trade usages and not law. The Bank of China concedes that the UCP 500 is not law, but it argues that de novo review is appropriate because the UCP 500 has acquired the function and status of law with respect to letters of credit which incorporate its terms. This circuit has long held that "[u]sage of trade is a question of fact." Pennzoil Co. v. F.E.R.C., 789 F.2d 1128, 1143 (5th Cir. 1986). Accordingly, the district court's finding that the Bank of China's letter did not comply with the usages of trade set forth in the UCP 500 is a factual conclusion subject to review for clear error.

The Bank of China received Voest-Alpine's documents on August 9, 1995. Since August 12 and 13 were Chinese banking holidays, the deadline for giving notice of dishonor was August 18, 1995. The Bank of China's only communication before the deadline was its telex of August 11, 1995. Accordingly, the issue is whether that telex provided notice of refusal.

The bank's August 11 telex stated:

UPON CHECKING A/M DOCUMENTS, WE NOTE THE FOLLOWING DISCREPANCY:
1.    LATE PRESENTATION.
2.    BENEFICIARY'S NAME IS DIFFER (sic) FROM L/C.
3.    B/L SHOULD BE PRESENTED IN THREE ORIINALS (sic) I/O DUPLICATE, TRIPLICATE.

5

4. INV. P/L. AND CERT. OF ORIGIN NOT SHOWING 'ORIGINAL.'
5. THE DATE OF SURVER (sic) REPORT LATER THAN B/L DATE.
6. WRONG L/C NO. IN FAX COPY.
7. WRONG DESTINATION IN CERT. OF ORIGIN AND BENEFICIARY'S CERT.
WE ARE CONTACTING THE APPLICANT FOR ACCEPTANCE OF THE RELATIVE DISCREPANCY. HOLDING DOCUMENTS AT YOUR RISK AND DISPOSAL.

The district court found that the telex failed to provide notice of refusal because (1) the bank did not explicitly state that it was rejecting the documents; (2) the bank's statement that it would contact JFTC about accepting the documents despite the discrepancies "holds open the possibility of acceptance upon waiver" and "indicates that the Bank of China has not refused the documents"; and (3) the Bank of China did not even mention refusal until its August 19 telex in which it wrote: "Now the discrepant documents may have us refuse to take up the documents according to article 14(B) of UCP 500." In light of these circumstances, the district court concluded that the August 11 telex was merely a status report, that the bank would not reject the documents until after it consulted JFTC, and that the bank did not raise the possibility of refusing payment on the letter of credit until August 19. Accordingly, the district court held that the Bank of China forfeited its right to refuse the documents and was obligated to pay Voest-Alpine.

We find ample evidence supporting the district court's decision. The court's determination that the August 11 telex did

6

not reject the letter of credit is based primarily on the Bank of China's offer to obtain waiver from JFTC. The offer to solicit waiver, the district court reasoned, suggests that the documents had not in fact been refused but might be accepted after consultation with JFTC. In reaching this conclusion, the district court relied heavily on the testimony of Professor James Byrne ("Byrne"), Voest-Alpine's expert witness on international standard banking practice and the UCP 500. Byrne testified that the bank's telex would have given adequate notice had it not contained the waiver clause. The waiver clause, he explained, deviated from the norm and introduced an ambiguity that converted what might otherwise have been a notice of refusal into nothing more than a status report. Faced with this evidence, the district court correctly decided that the Bank of China noted discrepancies in the documents, and, instead of rejecting the letter of credit outright, contacted JFTC for waiver.

Byrne further explained that the Bank of China's actions, viewed in light of standard banking practices, were ambiguous. The UCP 500 contemplates a three-step procedure for dishonoring letters of credit. First, the issuing bank reviews the documents presented for discrepancies. Second, if the bank finds problems, it contacts the purchaser for waiver. Finally, after conferring with the purchaser, the bank may issue its notice of refusal. This sequence ensures the issuing bank's independence in making its decision while also giving the purchaser an opportunity to waive

7

discrepancies, thus promoting efficiency in a field "where as many as half of the demands for payment under letters of credit are discrepant, yet, in the vast majority of cases, the account party waives the discrepancies and authorizes payment." Alaska Textile Co., Inc. v. Chase Manhattan Bank, N.A., 982 F.2d 813, 824 (2d Cir. 1992). In light of the generally accepted procedure outlined by Byrne, we agree with the district court that the Bank of China's notice of refusal was ambiguous and inadequate.

The Bank of China also contends that the district court improperly accepted Byrne's expert opinion because TCB employees Sherry Mama ("Mama") and Deborah Desilets ("Desilets") both testified that they understood the bank's August 11 telex to be a notice of refusal. However, in contrast to Byrne's reasoned explanation of why the waiver clause deviates from standard banking practice, Mama and Desilets, who were both fact witnesses, offer nothing more than their subjective beliefs. Moreover, the determinative question is not whether the Bank of China provided adequate notice of refusal to TCB, but whether it gave notice to Voest-Alpine; and the bank presented no evidence of Voest-Alpine's interpretation of the telex.

Viewed in the context of standard international banking practices, the Bank of China's notice of refusal was clearly deficient. The bank failed to use the standard language for refusal, failed to comply with generally accepted trade usages, and created ambiguity by offering to contact JFTC about waiver, thus

8

leaving open the possibility that the allegedly discrepant documents might have been accepted at a future date. Accordingly, the district court properly found that the August 11 telex was not an adequate notice of refusal. Since we agree with the district court that the bank failed to provide timely notice, we need not reach the question of whether the alleged discrepancies warranted refusal.

## C. Damages and Attorney's Fees

Finally, the Bank of China argues that the district court erred in its award of damages and attorney's fees. "A district court's damages award is a finding of fact, which this court reviews for excessiveness using the clear error standard." Lebron v. U.S., 279 F.3d 321, 325 (5th Cir. 2002). "The factual findings supporting an award of attorney's fees are reviewed for clear error; the conclusions of law underlying the award are reviewed de novo." Volk v. Gonzalez, 262 F.3d 528, 533 (5th Cir. 2001).

Both parties admit that East Girard Sav. Ass'n v. Citizens Nat. Bank and Trust Co., 593 F.2d 598, 603 (5th Cir. 1979), allows a plaintiff in a wrongful dishonor case to recover the face value of a letter of credit. The Bank of China contends that the East Girard rule should be rejected in the instant case. First, it argues that Voest-Alpine's damages should be reduced by the amount it received on resale of the styrene monomer. However, even if the bank had authority for this proposition, it cannot overcome the trial testimony that Voest-Alpine has not recovered any money by

9

reselling the monomer. Second, the Bank of China argues that its liability to Voest-Alpine should be reduced by the amount it may receive through a judgment against JFTC in a Chinese court. However, the district court has already entered an order providing for such a reduction. Accordingly, we affirm the district court's damages award.

The district court also awarded Voest-Alpine $266,453.46 in attorney's fees, with an additional $25,000.00 for fees incurred on appeal. Attorney's fees may be awarded in letter of credit cases only when the "underlying contract provides for their recovery or there is a statute permitting attorney's fees to be awarded." Id. at 604. Since there is no contractual provision for fees in the instant case, the question is whether a statutory basis for recovery exists.

Voest-Alpine contends that fees are appropriate under § 38.001 of the Texas Civil Practice and Remedies Code, which generally permits recovery of attorney's fees. The Bank of China argues that § 38.001 is inapplicable to letter of credit lawsuits and, even if it did apply, Voest-Alpine waived its right to relief under the statute. Both prongs of the bank's argument fail. First, the bank cites East Girard's 1979 holding for the proposition that "no statutory provision awards attorney's fees in letter of credit cases." Id. at 604. However, the bank ignores Temple-Eastex, Inc. v. Addison Bank, 672 S.W.2d 793, 798 (Tex. 1984), which held that attorney's fees in letter of credit cases are permitted under §

10

38.001's predecessor, article 2226 of the Texas Statutes. Accordingly, contrary to the Bank of China's position, a statutory basis for attorney's fees does exist.

Second, the Bank of China argues that Voest-Alpine waived its right to attorney's fees under § 38.001 by failing to specifically cite that statute in either its complaint or the pre-trial order. The bank points to our decision in <u>Ralston Oil and Gas Co. v. Gensco, Inc.</u>, 706 F.2d 685, 696 (5th Cir. 1983), which held that the plaintiff waived its claim to attorney's fees under article 2226 by failing to plead entitlement to fees under that article "at least with some specificity." However, in <u>Enserch Corp. v. Shand Morahan & Co., Inc.</u>, 952 F.2d 1485, 1500-01 (5th Cir. 1992), we held that despite <u>Ralston</u>'s suggestion that "a party must plead entitlement to [§ 38.001] fees at least with some particularity," all the statute really requires is that the defendant be put on notice that the plaintiff is seeking attorney's fees. In the instant case, Voest-Alpine pled for recovery of "attorney's fees payable under all applicable statutes. . . ." The bank also points to our decision in <u>Elvis Presley Enterprises, Inc. v. Capece</u>, 141 F.3d 188, 206 (5th Cir. 1998), for the proposition that a claim or issue omitted from the pre-trial order is waived, even if it appeared in the complaint. However, Voest-Alpine alleged in the pre-trial order that the Bank of China "is liable for the face amount of the Letter of Credit plus attorney's fees, interest, and all costs." Accordingly, since the Bank of China was on notice of

11

Voest-Alpine's intent to seek fees, Voest-Alpine did not waive its entitlement, and we uphold the district court's award.

## III. CONCLUSION

The Bank of China failed to provide Voest-Alpine with adequate notice that it was refusing payment on the letter of credit. Without a valid excuse for nonpayment, the bank is liable for the full amount of the letter of credit and for Voest-Alpine's legal fees. Accordingly, we affirm the judgment of the district court. AFFIRMED.