[No. B169885. Second Dist., Div. Eight. Oct. 26, 2004.]

DBJJJ, INC., Plaintiff and Appellant, v.
NATIONAL CITY BANK, Defendant and Respondent.

532

**COUNSEL**

Jamie R. Schloss and David L. Amkraut for Plaintiff and Appellant.

Mitchell Silberberg & Knupp, Richard B. Sheldon; Moses & Singer, Michael Evan Avidon and Philippe Zimmerman for Defendant and Respondent.

**OPINION**

**COOPER, P. J.—** ■ A documentary letter of credit is a method of payment whereby the promise of a stable financial source, usually a bank, is substituted for the promise of a credit applicant, usually a purchaser of goods. (*Paramount Export Co. v. Asia Trust Bank, Ltd.* (1987) 193 Cal.App.3d 1474 [238 Cal.Rptr. 920].) At least three separate, independent transactions underlie the letter of credit: (1) the undertaking from the issuer of the letter of credit to the beneficiary; (2) the agreement between the issuer and the credit applicant; and (3) the underlying contract between the applicant and the beneficiary. (*San Diego Gas & Electric Co. v. Bank Leumi* (1996) 42 Cal.App.4th 928, 933 [50 Cal.Rptr.2d 20]; *Paramount Export Co. v. Asia Trust Bank, Ltd., supra,* 193 Cal.App.3d at p. 1480.)

■ In this case, the triangular relationships included (1) an agreement for the sale of clothing between appellant, DBJJJ, Inc. (Seller), a garment manufacturer, and Pennsylvania Fashions, Inc. (Buyer); (2) an agreement between Buyer and respondent, National City Bank (Bank) regarding the issuance of two letters of credit; and (3) two letters of credit issued by Bank, naming Seller as the beneficiary. Both letters of credit were subject to the 1993 revision of the International Chamber of Commerce, Uniform Customs and Practices for Documentary Credits (UCP 500), a compilation of accepted commercial practices designed to ease international trade.[1] The UCP 500 provides that an issuing bank shall "have a reasonable time, not to exceed seven banking days following the day of receipt of the documents, to examine the documents and determine whether to take up or refuse the documents and to inform the party from which it received the documents accordingly." (Art. 13(b).)

Under the terms of the two similar letters of credit, Bank promised to pay Seller if Seller timely presented specified documents. After Seller shipped goods to Buyer, either Seller or its assignee presented documents to Bank and requested payment. Bank identified discrepancies between the documents and the terms of the credit and sought a waiver from Buyer. Failing to obtain a waiver, Bank refused the documentary presentation. Neither Seller nor its assignee ever received payment for the goods Seller shipped to Buyer.

---

[1] All undesignated citations to Articles are to the UCP 500. An Article number followed immediately by a letter indicates a subdivision of that Article. This short cite was adopted for the ease of the reader instead of using "sub-article," as utilized in publications of the International Chamber of Commerce or "subdivision" as utilized in the California Style Manual for citations to a statute.

To resolve the issues in this appeal, we must apply the UCP 500 to assess the timeliness of Bank's notice of its decision to refuse the documents. The meaning of the phrase "reasonable time, not to exceed seven banking days" is vigorously disputed.

■ We hold that seven banking days, the maximum time permitted, is not automatically reasonable where a bank seeks a waiver from an applicant. We also hold that the phrase "reasonable time, not to exceed seven banking days" is reflected in Article 14(d)(i)—the rule governing notice to the beneficiary of the decision to refuse the documents. Where a bank fails to timely examine documents and provide notice, it is precluded from arguing that the documentary presentation is nonconforming.

We shall reverse the summary judgment awarded in favor of Bank. Because Seller failed to establish that it was entitled to summary judgment, we shall remand the case to the trial court for further proceedings.

### FACTUAL BACKGROUND

Seller and Buyer entered into an agreement for the sale of clothing. Buyer applied for and Bank issued two similar letters of credit naming Seller as the beneficiary. Both letters of credit required a documentary presentation. Both identified Wilshire State Bank (WSB) as the advising bank and the place of expiry. For purposes of this appeal, the relevant facts concern the chronology of each letter of credit and may be briefly summarized.

*Letter of Credit No. ICS061083 (LOC No. 083)*

LOC No. 083 was issued October 19, 2001, in the amount of $123,000, and expired November 26, 2001. On November 26, 2001, either Seller or Hana Financial, Inc. (HFI), Seller's assignee, presented a request for negotiation and documents to WSB. On November 30, 2001, Bank acknowledged receipt of the documents.[2] That same day, Holly Stamos, an employee of Bank, reviewed the documents and prepared a "Negotiation Worksheet," a form document with blank spaces to be filled in by the document examiner. The Negotiation Worksheet listed three discrepancies between the documents and the terms of the credit.

On December 3, 2001, Stamos sent Buyer a letter identifying the discrepancies and seeking a waiver. The letter indicated that the "refusal date" was December 11, 2001. The letter concluded with the following sentence:

---

[2] The trial court found that Bank "did not reject Plaintiff's claim under LOC 083 on the ground that the claim was untimely."

"Please contact us immediately with your waiver of discrepancies or other instructions." On December 11, 2001, Buyer informed Bank that it refused to allow payment. That same day, Bank informed WSB that it was rejecting the presentation because of discrepancies in the documents. The notice to WSB listed the same discrepancies as those identified on the negotiation worksheet and described to Buyer.

*Letter of Credit No. ICS061091 (LOC No. 091)*

Bank issued LOC No. 091 on October 23, 2001, and it expired on December 14, 2001. On December 6, 2001, either Seller or HFI presented two separate requests for negotiation and documents to WSB. Bank acknowledged receipt of the documents on December 11, 2001. Stamos reviewed the documents the next day and prepared a Negotiation Worksheet, which identified four discrepancies between the documents and the terms of the credit.

Stamos sent a letter to Buyer noting the discrepancies and seeking a waiver. The letter referenced a refusal date of December 20, 2001 and concluded with the following sentence: "Please contact us immediately with your waiver of discrepancies or other instructions." On December 20, 2001, Buyer informed Stamos that it refused to allow payment. On the same day, Bank notified WSB that Bank rejected the presentation under LOC No. 091 because of discrepancies in the documents. The notice to WSB listed the same discrepancies as those identified on the Negotiation Worksheet and described to Buyer.

## PROCEDURAL BACKGROUND

In its first amended complaint, Seller alleged two causes of action for breach of contract, a violation of California Uniform Commercial Code section 5101 et seq., and negligence. Bank and WSB were named as defendants. WSB later was dismissed from the case and is not a party to this appeal.

Seller and Bank both moved for summary judgment. Seller primarily argued the reasons Bank provided for rejection of the documents were invalid, an issue it no longer advances on appeal. In its motion for summary judgment, Bank maintained that it timely examined and rejected Seller's presentations. In opposition, Seller disputed the timeliness of Bank's notice, the primary issue on appeal.

The trial court denied Seller's motion for summary judgment. Applying the UCP 500 and California law, the trial court granted Bank's motion for

summary judgment, finding "no triable issue of material fact as to whether [Bank] was obligated to make payments under the subject letters of credit." The court concluded, "Defendant [Bank] had until the close of business on the seventh banking day following its receipt of Plaintiff's claim and supporting documents . . . to send its Advice of Rejection," and because Bank complied with this seven-day time period its notices of refusal were timely. Seller appealed.

## CONTENTIONS

This appeal does not involve the adequacy of Seller's documentary presentation, but instead concerns whether Bank is estopped from relying on the conceded inadequacy of Seller's presentation.[3] The principal issue is whether Bank is precluded from raising discrepancies in the documents because it failed to provide timely notice of its refusal to honor the documents.

Seller also argues that it is entitled to summary judgment because Bank improperly colluded with Buyer in seeking a waiver of the discrepancies, that Bank was required to notify it of the discrepancies at the same time it notified Buyer, and that Bank decided to refuse the documents at the time it identified the discrepancies in the documents.

Bank disputes all of Seller's contentions and argues that Seller lacks standing, that Ohio law governs, and that the UCP supplants the Commercial Code.

## DISCUSSION

We begin with the threshold issues raised by Bank—applicable law and standing. In part II, we consider the crux of this case—the length of time an issuing bank has to examine documents when it seeks a waiver from the applicant. In part III, we discuss preclusion under the UCP 500, focusing on whether an issuing bank forfeits its right to argue that the documents are nonconforming if it exceeds the time period allotted for examining the documents and seeking a waiver. In the remaining sections, we discuss Seller's claims that Bank violated Article 14 because (1) Bank was required to notify it of the discrepancies at the same time it notified Buyer, (2) Bank

---

[3] The issues on appeal are substantially narrower than those raised before the trial court. For purposes of this appeal, there is no dispute that the presentations under both LOC No. 083 and LOC No. 091 failed to comply with the letters of credit. Seller no longer claims that Bank violated the seven-day maximum period for notifying a beneficiary of a refusal to honor a letter of credit, that the discrepancies are only minimal, or that the credit conditions were not allowed by the UCP 500. Seller also no longer contends that the delivery of notice to WSB was insufficient and it should have instead been sent to Seller.

colluded with Buyer under the guise of seeking a waiver of discrepancies, and (3) Bank rejected the documents at the time it identified discrepancies between the documents and the terms of the credit.

I.

## A. *Choice of Law*

Citing section 5116, subdivision (a) of the California Uniform Commercial Code,[4] Bank argues that "as the letters of credit were issued in Ohio, to the extent that any state law should be applied, including the Commercial Code, Ohio law is applicable." The only citation to Ohio law in Bank's brief is for the proposition that Ohio law is identical to California law in its requirement that documents must strictly comply with the terms and conditions of a letter of credit. This legal principle is irrelevant to this appeal because Seller now concedes that its documents were nonconforming. Because Bank fails to analyze, cite to, or provide Ohio law on any of the issues relevant to this appeal, it is appropriate to analyze it under California law. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 469, fn. 7 [11 Cal.Rptr.2d 330, 834 P.2d 1148].)

In any event, Bank's claim that Ohio law is applicable is simply a distraction. The California law objected to by Bank, section 5108, is exactly the same as Ohio law. Both states adopted the Uniform Commercial Code language and commentary as their own. (See ULA U. Com. Code Rev. art. 5, p. 133; Cal. U. Com. Code, § 5108; Ohio Rev. Code Ann., § 1305.07.)

## B. *Applicability of the California Uniform Commercial Code*

The parties agree that both letters of credit are subject to the UCP 500. Bank argues "the Commercial Code is relevant only with respect to issues not addressed by UCP 500." Section 5116, subdivision (c) provides in part: "Except as otherwise provided in this subdivision, the liability of an issuer, nominated person, or adviser is governed by any rules of custom or practice, such as the Uniform Customs and Practice for Documentary Credits, to which the letter of credit, confirmation, or other undertaking is expressly made subject." However, "where there is no conflict between Article 5 and the relevant provision of the UCP or other practice, both apply." (Official Comments on U. Com. Code, Deering's Ann. Cal. U. Com. Code (1999 ed.) foll. § 5116, p. 699.)

---

[4] All further undesignated statutory citations are to this code.

Bank identifies one potential conflict between the UCP 500 and the California Uniform Commercial Code—preclusion. We shall discuss preclusion based only on the UCP 500. Aside from this single potential conflict, Bank identifies no other conflict and we find no other conflict relevant to issues in this appeal. (See Hawkland, Uniform Commercial Code Series (1999 rev.) rev. § 5-108:4 [art. 5 revised to track UCP 500]; see also Official Comments on U. Com. Code, Deering's Ann. Cal. U. Com. Code, *supra*, foll. § 5116, p. 699 [art. 5 is generally consistent with UCP 500].)

C. *Standing*

Bank next argues that Seller lacks standing because Seller assigned its interest in both letters of credit to HFI. The trial court did not base the award of summary judgment on that ground. In this court, Bank acknowledged that it received a "letter purporting to establish that HFI transferred its rights under the letters of credit back to Appellant."

■ The general rule favors permitting a party to substitute the real party in interest. (*Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1678 [43 Cal.Rptr.2d 214]; *California Air Resources Board v. Hart* (1993) 21 Cal.App.4th 289, 300 [26 Cal.Rptr.2d 153].) If Seller is not the proper party, it should have the opportunity to substitute HFI. (*Garrison, supra*, at p. 1678; *California Air Resources Board, supra*, at p. 300.)

## II.

Seller challenges the trial court's conclusion that Bank "had until the close of business the seventh banking day following its receipt of Plaintiff's claim and supporting documents . . . to send its Advice of Rejection, and because Bank complied with this seven day time period its notices of refusal were timely." The parties agree only that the relevant provisions are found in Articles 13 and 14 of the UCP 500.

■ According to Article 14(c): seeking a waiver from an applicant "does not . . . extend the period mentioned in sub-Article 13(b)." The time period in Article 13(b) is "*a reasonable time, not to exceed seven banking days* following the day of receipt of the documents, to examine the documents and determine whether to take up or refuse the documents and to inform the party from which it received the documents accordingly."

Bank argues "[t]he safe harbor does not extend the seven banking day period. Rather, it merely recognizes that it is reasonable for an issuing bank to have the full seven banking days if the applicant does not respond sooner to a request for a waiver (or responds on the final day)." For support Bank

cites to a document that indicates, in practice, a bank uses seven banking days to provide notice whenever a bank seeks a waiver from the applicant. Bank provides only an excerpt of this document, which appears to be in a 1998 newsletter from the United States Council on International Banking.

Bank's interpretation is inconsistent with the UCP 500 because it entirely disregards the phrase "reasonable time." Article 13(b) provides for a "reasonable time, not to exceed seven banking days." It does not, as Bank's argument suggests, provide for a time period of "seven banking days." By giving no meaning to the phrase "reasonable time," Bank's argument is inconsistent with the plain language of Article 13(b).

Bank's argument cannot be reconciled with the intent of the UCP 500. (Internat. Chamber of Commerce, Com. on Banking Technique and Practice, Publication No. 511, UCP 500 & 400 Compared 39 (del Busto ed. 1993) [UCP 500 and 400 Compared] at p. 40.)[5] "The seven-day limit, as stipulated in UCP 500 sub-Article 13(b) was agreed upon as a compromise . . . . However, just because a bank now has a limit not to exceed seven days following the day of receipt of the documents, to examine the documents and determine whether to take up or refuse the documents does not mean that it is prudent, reasonable, or even proper for a bank to take all of that time to examine the documents and determine whether to accept or refuse such documents." (*Ibid.*)

Bank's argument also ignores the comment to the California Uniform Commercial Code section 5108, adopted by both California and Ohio, which provides: "Section 5-108(a) balances the need of the issuer for time to examine the documents against the possibility that the examiner (at the urging of the applicant or for fear that it will not be reimbursed) will take excessive time to search for defects. What is a 'reasonable time' is not extended to accommodate an issuer's procuring a waiver from the applicant. See Article 14c of the UCP." The same comment continues: "Examiners must note that the seven-day period is not a safe harbor. The time

---

[5] We rely heavily on the publication of the International Chamber of Commerce UCP 500 & 400 Compared. It provides "extensive commentaries on the rationale for the revision of the Articles" and is described as a "companion" to the UCP 500. (UCP 500 & 400 Compared, *supra*, p. III.) As Bank notes, it reflects the opinion of the working group responsible for the revision culminating in the UCP 500 and does not necessarily reflect the view of all members of the working group. (UCP 500 & 400 Compared, *supra*, p. V.) We are mindful that this analysis is not part of the text and where there is a meaningful difference, we follow the text of the UCP 500. (See fn. 8, *post.*)

within which the [issuing bank] must give notice is the lesser of a reasonable time or seven business days. Where there are few documents . . . the reasonable time would be less than seven days." (Official Comments on U. Com. Code, Deerings Ann. Cal. U. Com. Code, *supra*, foll. § 5108, p. 676.)[6] This comment to the California Uniform Commercial Code is consistent with the plain language of Article 13(b), which requires a bank to examine the documents within a reasonable time and establishes the maximum time reasonable as seven banking days.

Bank cites a two-page excerpt from an article by the United States Council on International Banking as its sole support for its argument that the full seven banking days is reasonable. Assuming the reliability of the two-page excerpt, it is unpersuasive for the same reason Bank's argument is unpersuasive; it is inconsistent with the plain language of the UCP 500, the intent of the UCP 500, and the 1995 Official Comments on Uniform Commercial Code. Whereas Article 13(b) indicates that a reasonable time cannot exceed seven banking days, the excerpt indicates, without supporting authority, that the bank "has up to the full seven day period within which to give notice of refusal."

■ To the extent Bank is arguing that the practice of banks may elucidate the meaning of the UCP 500, that argument may have merit where the practice is consistent with the UCP and further explains the UCP. (See, e.g., *Voest-Alpine Trading USA Corp. v. Bank of China* (5th Cir. 2002) 288 F.3d 262, 265 [reviewing expert testimony on the meaning of terms used in the UCP 500].)[7] The UCP does not rise to the status of a law. *(Ibid; Alaska Textile v. Chase Manhattan* (1992) 982 F.2d 813, 816.) Therefore, the general restriction on expert testimony on an issue of law is relaxed. (See *Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1184–1185 [82 Cal.Rptr.2d 162] [holding that an expert opinion is not admissible on an issue of law]; *Alaska Textile, supra,* 982 F.2d at p. 816 [allowing expert testimony on the UCP]; § 5108, subd. (e) ["Determination of the issuer's observance of the standard practice is a matter of interpretation for the court."].)

However, to the extent Bank's argument is that the industry norm trumps the UCP 500, that argument lacks merit. Countenancing that argument would

---

[6] As explained in the comment to section 5108, there is a distinction between the UCP and section 5108 of the California Uniform Commercial Code: "Under both the UCC and the UCP the issuer has a reasonable time to honor or give notice. The outside limit of that time is measured in business days under the UCC and in banking days under the UCP, a difference that will rarely be significant." (Official Comments on U. Com. Code, Deering's Ann., Cal. U. Com. Code, *supra,* foll. § 5108, p. 676.) For purposes of this appeal, this difference is irrelevant.

[7] To the extent the trial court excluded similar evidence of the standard practice presented by Seller in the form of an expert declaration, it erred.

result in a "fragmented patchwork of local customs and practices, the very problem letters of credit and the UCP were designed to avoid." (*Brenntag International v. Norddeutsche Landesbank* (S.D.N.Y. 1999) 70 F.Supp.2d 399, 409 [rejecting argument that court should rely on specific banking practices instead of plain meaning of UCP].) Additionally, relying on what Bank characterizes as standard practice instead of the provisions UCP 500 would alter the terms of the letters of credit, which adopt the UCP 500, not the practice described in an excerpt by the United States Council on International Banking.

Bank does not argue that there is evidence the seven-banking-day period was reasonable based on the specific circumstances of this case. Nor did it base its summary judgment motion on any of the factors generally relevant in assessing the reasonableness of the time period, including: "the circumstances of presentation, the type and the value of documents," and the number of documents. (UCP 500 and 400 Compared, *supra*, p. 40.) Bank's claim was that seven banking days is always reasonable where a bank seeks a waiver from an applicant, an incorrect argument. Accordingly, Bank did not show, as a matter of law, it acted within a reasonable time, and the trial court erred in awarding Bank summary judgment.

## III.

The next issue is whether Seller is entitled to summary judgment. Seller claims Bank is precluded from arguing that the documents were not in compliance with the terms and conditions of the letters of credit. Preclusion is a penalty for failure to fulfill certain requirements of the UCP 500.

Article 14(e) governs preclusion. It provides that if the issuing bank "fails to act in accordance with the provisions of the Article . . . the Issuing Bank and/or Confirming Bank, if any, shall be precluded from claiming that the documents are not in compliance with the terms and conditions of the Credit." The preclusion rule clearly applies to a failure to act in accordance with the provisions of Article 14. However, whether the same rule applies to a violation of Article 13(b) is ambiguous.

This current ambiguity contrasts with the clarity of the former version of the UCP. Under the former UCP, the preclusion rule was found in Article 16 and applied to a violation of that Article. Former Article 16(c) provided: "The issuing bank shall have a reasonable time in which to examine the documents and to determine as above whether to take up or to refuse the documents." (UCP 500 and 400 Compared, *supra*, p. 45 [quoting text of the International Chamber of Commerce, Uniform Customs and Practices for Documentary Credits (1983) Publication No. 400, Art. 16].) Thus, under the former version

of the UCP, a bank that exceeded the time period for examining documents would forfeit the ability to argue the documents presented were not in compliance with the terms of the credit.

█ The intent of the International Chamber of Commerce demonstrates the same penalty applies under the current UCP 500. As explained in the UCP 400 and the UCP 500 Compared: "Sub-Article (14)(d)(i): The changes in this sub-Article reflect the new rule on a reasonable time stated in UCP 500 sub-Article 13(b) . . . ." (UCP 500 & 400 Compared, *supra*, p. 47.) Article 14(d)(i) provides that notice must be given "without delay but no later than the close of the seventh banking day following the day of receipt of the documents" as used in Article 13(b). To reflect the rule on reasonable time in Article 13(b), the term "without delay but no later than the close of the seventh banking day following the day of receipt of the documents" as used in Article 14(d)(i) must be the same as within "a reasonable time, not to exceed seven banking days."

While the lack of precision in the language of Article 14(e) raises an ambiguity, Bank points to no authority indicating the UCP 500 intended to fundamentally alter the rule of preclusion, and we find none. The time spent examining the documents dictates when the issuing bank is required to notify the beneficiary of discrepant documents. If the issuing bank does not examine the documents within a "reasonable time, not to exceed seven banking days" it cannot notify the beneficiary "without delay" as required by Article 14(d)(i). Thus, Article 14(d)(i) incorporates the time period specified in Article 13(b). A violation of Article 13(b) results in a violation of Article 14(d)(i), which, in turn, triggers preclusion under Article 14(e).

The remaining question is whether Bank failed to provide timely notice to Seller (or WSB) as a matter of law. Seller's separate statement and motion for summary judgment are insufficient to show notice was untimely as a matter of law. Seller's entire argument in its motion for summary judgment on this issue was as follows: "Under the UCP, if an issuer does not dishonor a demand for payment within a reasonable time, it is deemed to have honored it, whether or not the documents actually conform to the terms of the credit. Thus, in an action for wrongful dishonor, the beneficiary can invoke this rule of strict preclusion to estop the issuer from relying on the documents' nonconformity–regardless of whether the beneficiary has demonstrated detrimental reliance. [Citations]." There are no facts in Seller's separate statement in support of its motion for summary judgment relevant to this issue. To obtain summary judgment, Seller must show that the time period Bank used to examine documents, seek a waiver, and notify Seller (or WSB) was unreasonable. A mere description of the rule of preclusion is insufficient.

## IV.

 Seller states that Bank was required to notify it of the discrepancies at the same time it notified Buyer. Seller relies on the following statement in the UCP 500 and 400 Compared: the fact that "the Issuing Bank is not precluded from contacting the Beneficiary to obtain a timely cure or correction of a curable discrepancy(ies)." (UCP 500 & 400 Compared, *supra*, p. 47.) Contrary to Seller's argument, the fact that the issuing bank is not precluded from contacting the beneficiary does not indicate that the issuing bank is required to contact the beneficiary. The permissive language "not precluded" does not create a mandatory obligation as argued by Seller.

Seller describes policy reasons supporting a rule requiring an issuing bank to notify the beneficiary at the same time as the applicant. No doubt notice to the beneficiary would assist the beneficiary in curing any deficiencies in the documentary presentation. Bank identifies no substantial burden such a notice requirement would create. In this case, Bank could have faxed a copy of its letter seeking a waiver to Seller (or WSB) at the same time it sent the original to Buyer. The issue, however, is not the desirability of a rule requiring a bank provide notice to the beneficiary at the same time it seeks a waiver of discrepancies from the applicant. That argument is better addressed to the International Chamber of Commerce. The issue here is whether Bank was obligated to provide Seller (or WSB) such notice. Seller fails to show any such obligation.

## V.

Seller next argues that Buyer improperly colluded with Bank.

 The UCP expressly authorizes the issuing bank to approach the applicant for a waiver of the discrepancies if it determines the documents "appear on their face not to be in compliance with the terms and conditions of the Credit." (Art. 14(c).) However, the issuing bank must act "as an independent and trusted paymaster and not as a conduit of the Applicant to refuse payment. Therefore, the contact with the Applicant is not justifiable if it is designed to allow the Issuing Bank and the Applicant to make a joint decision on the discrepant documents. [¶] The decision to honor or refuse the documents must be the Issuing Bank's. The approach to the Applicant must be made solely to obtain his waiver once the Issuing Bank decides to refuse the discrepant documents." (UCP 500 & 400 Compared, *supra*, pp. 46–47.)

This mandated independence safeguards the nature of the letter of credit as a distinct transaction from the underlying contract. As Article 3 explains: "Credits, by their nature, are separate transactions from the sales or other

contract(s) on which they may be based and banks are in no way concerned with or bound by such contract(s), even if any reference whatsoever to such contract(s) is included in the Credit. Consequently, the undertaking of a bank to pay . . . is not subject to claims or defen[s]es by the Applicant resulting from his relationships with the Issuing Bank or the Beneficiary." (Art. 3(a).)

Where an issuer, under the guise of seeking a waiver, permits an applicant to participate in the decision of whether to honor or dishonor the documents, it runs afoul of the independence rule. (*E & H Partners v. Broadway Nat. Bank* (1998) 39 F.Supp.2d 275, 284–285.) Such collusion was found where an applicant "repeatedly urge[d]" the bank not to comply and where the applicant hired a lawyer to find discrepancies in the documents. (*Ibid.*)

Here, contrary to Seller's allegations, there is no evidence of collusion; there is no evidence that Buyer identified discrepancies in the documents or that Bank and Buyer made a joint decision on the documents. The closest evidence Seller cites is evidence that Bank ended its letter to Buyer as follows: "Please contact us immediately with your waiver of discrepancies or other instructions." While this may properly be construed as creating an opportunity for collusion, it does not demonstrate actual collusion.

## VI.

A close reading of Article 14(b) reveals an ambiguity regarding the point in time when a bank refuses to take up the documents—either immediately upon identifying discrepancies or after receiving a response to a request for a waiver. The distinction is significant because the refusal to take up documents triggers the necessity to provide notice.

Under Article 14(b), a bank "may refuse" the documents if they are inconsistent with the terms of the letter of credit. Under Article 14(c), a bank may approach the applicant for a waiver of the discrepancies. However, the bank is required to give notice "without delay" of its refusal decision. (Art. 14(d)(i).) Whenever a bank sought a waiver from the applicant, it would violate the "without delay" rule if its decision to refuse documents automatically flowed from its identification of discrepancies between the documents and the terms of the credit. The foregoing interpretation, advanced by Seller, would establish a process whereby a bank is punished for following a procedure expressly authorized by the UCP 500.

Instead, identifying discrepancies and refusing the documents are two separate acts.[8] (Cf. *Voest-Alpine Trading USA Corp. v. Bank of China,*

---

[8] The UCP 500 commentary uses language, which we have quoted, that the issuing bank seeks a waiver from the applicant "once the Issuing Bank decides to refuse the discrepant

*supra*, 288 F.3d at p. 266 [finding evidence of a distinction between identifying discrepancies and refusing the documents based on expert testimony of UCP 500].) It is difficult to imagine a circumstance where a bank unilaterally would choose to honor a nonconforming documentary presentation. Nevertheless, a bank may identify discrepancies and agree to take up the documents if it obtains a waiver from the applicant. Therefore, the identification of the discrepancies is separate from the refusal to take up the documents.

The distinction between identifying discrepancies and refusing documents is consistent with the conclusion that Article 14(d)(i) incorporates the "reasonable time, not to exceed seven banking days" in Article 13(b). Under the UCP 500, the issuing bank has a reasonable time not to exceed seven banking days to examine the documents, identify discrepancies if any, seek a waiver if applicable, and decide whether to take up or refuse the documents. If it decides to refuse the documents, it must then notify the beneficiary without delay.

Finally, Seller argues that if Bank refused the documents only after it learned of Buyer's decision not to waive the discrepancies, it violated the requirement in Article 14(b) that the issuing bank base its decision to refuse the documents based solely on the documents. Article 14(b) provides: "Upon receipt of the documents the Issuing Bank . . . must *determine on the basis of the documents alone whether or not they appear on their face to be in compliance with the terms and conditions of the Credit*. If the documents appear on their face not to be in compliance with the terms and conditions of the Credit, such banks may refuse to take up the documents." (Italics added.) This provision requires the issuing bank determine compliance on the basis of the documents alone. It does not preclude the issuing bank from considering whether the applicant would waive discrepancies. If it did, the permission to seek a waiver under Article 14(c) would be meaningless. The issuing bank would be permitted to seek a waiver but precluded from relying on it.

## CONCLUSION

Bank failed to establish that, as a matter of law, it provided timely notice to Seller of its decision to refuse the documents. Summary judgment in favor of Bank must be reversed. In its motion for summary judgment, Seller did not demonstrate as a matter of law, Bank exceeded a reasonable time as specified in Article13(b) and incorporated in Article 14(d)(i). If, upon remand, Seller establishes that Bank violated Article 13(b), Bank would be precluded from claiming the documents are not in compliance with the terms of the credit.

---

documents." (UCP 500 & 400 Compared, *supra*, p. 47.) Because this comment is at odds with the process envisioned in Article 14 itself, we do not rely on it.

## DISPOSITION

The judgment is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Each party to bear its own costs on appeal.

Boland, J., and Flier, J., concurred.

A petition for a rehearing was denied November 29, 2004.